IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| RONETTA W. JONES,<br><br>     *Plaintiff*,<br><br>v.<br><br>BEST BUY,<br><br>     *Defendant*. | CASE NO. 6:16–cv–00004<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff was terminated by her employer, Best Buy, in March of 2014. Subsequently, she filed suit against Best Buy for violations of Title VII of the Civil Rights Act of 1964, §§ 701 *et seq*., 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), claiming that she was fired in retaliation for previously submitting an Equal Employment Opportunity Commission (EEOC) charge against Best Buy. Construing Plaintiff's *pro se* complaint liberally, the Court also interprets Plaintiff as making a claim of racial discrimination under Title VII.

Based on Plaintiff's own sworn statements and others in the record, the Court concludes that Plaintiff has failed to present evidence establishing a *prima facie* case under Title VII for either retaliation or racial discrimination. Accordingly, Defendant's motion for summary judgment will be granted and Plaintiff's case will be dismissed with prejudice.

I. **Background**

Plaintiff is a forty-nine-year-old African-American female who is proceeding *pro se* in this case. (Dkt. 18, Exhibit A at 13 [hereinafter "A13"])[1]. Best Buy hired Plaintiff on July 17,

---

[1] Specific parts of exhibits to Defendant's Motion for Summary Judgment are referred to solely by their exhibit letter and page or paragraph number in this memorandum (*e.g.* A31, B53, R ¶5). The word "Exhibit" is used to refer to an exhibit in its entirety (*e.g.* Exhibit L).

2008 (A47-48) and she was later promoted to the "SWAT" position.[2] (*Id.*). Her employment with Best Buy was terminated on March 4, 2014. (A49).

On November 12, 2013, almost four months before her termination, Plaintiff filed a charge with the EEOC. (A72, 74-75; B69-70; Exhibit L). The charge alleged that Plaintiff was being discriminated against on the basis of race and presented three specific grievances that: (1) three recent performance write-ups were unjustified, (2) a supervisor had made sexual remarks to her, and (3) a recent hire of a different race was being given training not available to her. (B69-70; Exhibit L). Taking into account the entirety of Plaintiff's evidence, the Commission found that there was insufficient evidence to establish a violation of the law and dismissed her charge. (B94-95; Exhibit L).

Both parties agree that Plaintiff's termination was due at least in part to, and was certainly initiated by, a time editing incident that took place on February 3, 2014. (*See* A49-50, 71; B60-61). Normally, employees at Best Buy may not manually edit their start time back to an earlier time and instead receive credit only for time worked after they actually clock in. (A151). Sometimes, however, an employee is permitted to manually enter an earlier start time when the manager failed to open the store at the start of the shift, the rationale being that it is the manager and not the employee who is at fault for the employee's late start in such instances. (A151-152, 170-171; B8, 33). Such edits are only permitted when the employee is ready and waiting near the entrance to the store at the start of their shift and the only reason for delay is the manager's own tardiness. (*Id.*)

On February 3, 2014, Plaintiff's shift was scheduled to start at 7:00 a.m., and she was present in her car in the parking lot at approximately 6:45 a.m., waiting for her manager to open

---

[2] "The SWAT position is responsible for maintaining inventory control and integrity and assisting in asset protection." (A157-158; Exhibit D, ¶3). Some specialized training is needed for this position.

2

the store. (B15, 17-18). However, Plaintiff "closed her eyes" for a few minutes and did not notice manager Brittany Bussert open the store at approximately 7:00 a.m. or shortly thereafter. (B17-18, 20). Another employee who entered the store with Bussert that morning was able to clock in at 7:04 a.m. (B18-20, 23-24; D, ¶4; Exhibit N). At 7:09 a.m., Bussert texted plaintiff "You good?" after which Plaintiff entered the store and eventually clocked in at 7:11 a.m. (Text message (B19-20, 21, 24-25, 28; Exhibit O); Time of entry (A71; B22, 30-31; Exhibit Q)). Plaintiff then manually edited her time back to reflect a 7:00 a.m. start time, thereby receiving compensation for time worked between 7 a.m. and 7:11 a.m. (A71; B30-31).

Subsequently, another supervisor at Best Buy, Dylan Litchford, noticed Plaintiff's time edit when auditing the records and reported it to the Human Resource Support Center (HRSC). (B39-40; Exhibit D, ¶5). Litchford had a duty to report any such time edit discrepancies he encountered. (A152-153). The matter was referred to Nikhil Das at HRSC for evaluation. (E, ¶5). Plaintiff was informed on February 10, 2014 that her employment with Best Buy was suspended pending an investigation of the time edit. (B52-53). During the investigation, Das made several attempts to contact Plaintiff, but was unsuccessful. (B54-56). After receiving approval from HRSC, Plaintiff's manager Aaron Watson implemented her termination on March 4, 2014. (C, ¶6; E, ¶6; Exhibit S; A51-52). The sole reason given for Plaintiff's termination was her time edit violation. (B60-61; Exhibit S).

On February 10, 2016, Plaintiff initiated the present complaint against Best Buy, alleging violations of Title VII. (Dkt. 1). On September 14, 2016, Defendants filed their motion for summary judgment. (Dkt. 18). Plaintiff, proceeding *pro se*, has not filed a response despite being given ample notice and opportunity to respond pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

3

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If, however, the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

## III. Discussion

### a. Retaliation

Plaintiff asserts a claim for retaliation under Title VII, alleging that her termination was in response to her previously filed EEOC charge. When there is no direct evidence of retaliation, courts employ the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1983) to evaluate a plaintiff's Title VII retaliation claims. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). Here, the record is devoid of any direct evidence of retaliation, so this court will evaluate the case under the burden shifting framework.

4

Under the burden shifting framework, the plaintiff must first establish a *prima facie* case for retaliation by proving: "(1) that [she] engaged in protected activity, (2) that an adverse employment action was taken against [her], and (3) that there was a causal link between the protected activity and the adverse employment action." *Laughlin v. Metro Washington Airports Auth.,* 149 F.3d 253, 258 (4th Cir. 1998).

Plaintiff clearly establishes the first two elements. Parties do no contest that (1) Plaintiff engaged in a protected activity when she filed an EEOC charge, and (2) that the termination of Plaintiff's employment in March of 2014 constituted an adverse employment action against her. The only remaining issue, therefore, is whether there is a causal link between the protected activity and the adverse action.

There are several factors to consider in determining whether the third element, a causal link, exists. Mere unsupported speculation of a causal connection will not suffice. *Ferrell v. Great E. Resort Corp.*, No. 5:13CV00075, 2014 WL 5877785, at *8 (W.D. Va. Nov. 12, 2014). For a causal link to exist, courts require at a minimum that the person initiating the adverse employment action must actually have knowledge of the protected activity. *See Baqir v. Principi,* 434 F.3d 733, 748 (4th Cir. 2006); *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004); *Dowe v. Total Action Against Poverty,* 145 F.3d 653, 657 (4th Cir. 1998). "In essence, if the relevant official was unaware of the protected activity at the time of the alleged retaliation, there can be no causal link between the two events." *Ferrell*, 2014 WL 5877785, at *7 (internal quotations omitted). A long temporal gap between protected activity and adverse action creates the inference that they are not causally connected. *Pascual v. Lowe's Home Centers, Inc.*, 2006 U.S. App. LEXIS 19760 at *12 (4th Cir. 2006). A causal connection is also less likely when employees who did not engage in the protected activity faced the same adverse employment

5

action as the plaintiff. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 299 (4th Cir. 2004) (noting that there was "no claim that similar infractions were overlooked" in deciding to deny a retaliation claim). Courts may also consider the consistency of the reasoning given by the employer for dismissal. *See, e.g., King v. Pulaski Cty. Sch. Bd.*, No. 7:14CV00602, 2016 WL 3951325, at *7 (W.D. Va. July 20, 2016).

Here, Plaintiff has not provided sufficient evidence of a causal connection between her termination and the EEOC charge. First and foremost, she has failed to provide evidence that the actors responsible for her termination were aware of her EEOC charge. Litchfield was unaware of her prior EEOC charge when he reported her timekeeping edit and indeed was under an affirmative duty to report any suspicious edits that he encountered. (B47-48; R, ¶2). Das, who was ultimately responsible for recommending termination after investigating the incident, also had no knowledge of the prior EEOC charge. (E, ¶6).

Although the manager who ultimately implemented the termination, Aaron Watson, may have had knowledge of her prior complaints, his knowledge is insufficient to make out a prima facie case. (C, ¶7). "To satisfy the third element, the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). As the only party shown to have knowledge of Plaintiff's protected activity or alleged to have engaged in wrongdoing, Watson must have been responsible for the termination in order for it to be "because" of the prior EEOC charge. However, Watson's role was too causally removed from the termination for this to be the case. Plaintiff admits that Litchford's catching of the edit was the "sole catalyst" for her termination. (B47-48). Further, Watson conducted the termination only after the HRSC had concluded that there was a violation of policy and had given "approval" for the termination. (C,

¶6). Without Litchford catching the time edit and Das recommending termination, Watson would not have been able to terminate Plaintiff for this violation.

Other factors support a lack of causal connection. The several-month gap between Plaintiff's EEOC charge and her firing is indicative of a lack of causal connection. Further, the reasoning for termination given by Best Buy was consistent throughout – that Plaintiff was dismissed because of her violation of the timekeeping policy. Such consistency makes it unlikely that Best Buy was using *post hoc* rationalizations to justify a retaliatory firing.

Finally, Defendant's motion presents compelling and unchallenged evidence that Plaintiff did not receive differential treatment because she engaged in a protected activity. Other employees who made no EEOC charges were dismissed for the exact same timekeeping violation as Plaintiff, including one dismissed for editing his time back only five minutes. (B58-60; C, ¶9). Such dismissals demonstrate that the conduct of Plaintiff was sufficient to cause her termination, independent of any retaliatory motivation. In sum, Plaintiff has failed to develop a record with sufficient evidence pointing towards a causal connection between her termination and her EEOC charge.

Under the *McDonnell Douglas* burden shifting framework, Plaintiff has not made a *prima facie* case for retaliation. Accordingly, this Court need not determine if non-discriminatory reasons for the firing existed or whether those reasons were pretextual to conclude that Plaintiff's retaliation claim cannot succeed. Defendant's motion for summary judgment as to this claim will be granted.

### b. Race discrimination

As an initial matter, this Court will construe Plaintiff's complaint as asserting racial discrimination claims under Title VII. Although plaintiff does not expressly state such claims,

they can be inferred from the contents of her complaint, which state that she was wrongfully terminated and that racial discrimination was occurring at her workplace. (Dkt. 1 at Q9.B ("[E]mployees of colored race were being terminated or over-looked for advance employment in store.")). Further, Plaintiff's EEOC charge, which was the basis of the retaliation claim, itself alleged racial discrimination under Title VII. (Exhibit L). The Court must liberally construe a *pro se* complaint, particularly for a civil rights plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978) (stating that district courts "must be especially solicitous of civil rights plaintiffs"). In doing so here, the Court finds that Plaintiff has alleged racial discrimination under Title VII.

As with retaliation claims under Title VII, racial discrimination claims proceed under the *McDonnell Douglas* burden shifting framework when there is no direct evidence of discrimination. *Warren v. Tri Tech Labs., Inc.*, 993 F. Supp. 2d 609, 632 (W.D. Va.), *aff'd,* 580 F. App'x 182 (4th Cir. 2014). Here, there is no direct evidence of discrimination, so the analysis will proceed to whether Plaintiff can prove the four step *prima facie* case that: "(1) [she] is a member of a protected class; (2) [she] suffered adverse employment action; (3) [she] was performing [her] job duties at a level that met [her] employer's legitimate expectations at the time of the adverse employment action*;* and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Id.*

The first two elements of the *prima facie* case are uncontested here. The parties agree that, as an African American woman, Plaintiff was a member of a protected class and that an adverse employment action occurred when her employment was terminated.

However, the fourth prong – that Plaintiff was replaced by an applicant outside of the protected class – is also uncontested, but in favor of the Defendant's position. Defendant presents

8

uncontroverted evidence that Plaintiff's position was filled by another African American female. (B96). Plaintiff has failed to present any evidence to combat this assertion and thus fails to make a *prima facie* case of racial discrimination.

Because Plaintiff has failed to make a *prima facie* case, she has failed to make a Title VII racial discrimination claim under the *McDonnell Douglas* framework. This Court need not evaluate whether valid nondiscriminatory reasons existed or whether they were pretextual. Accordingly, Defendant's motion for summary judgment on this ground will be granted.

## IV. Conclusion

Plaintiff's own sworn statements demonstrate that she cannot make a *prima facie* case of either retaliation or racial discrimination under Title VII. Even considering the evidence in a light most favorable to Plaintiff, the uncontroverted evidence in the record does not support the conclusion that Plaintiff was fired for any reason other than a clear violation of Best Buy's timekeeping policy. Accordingly, Defendant's motion for summary judgment will be **GRANTED** and Plaintiff's case will be be **DISMISSED WITH PREJUDICE.**

Entered this 1st day of November, 2016.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE